The next case is Fuzzysharp Technologies v. Intel 2014-12-61, and our first decision in this case is that we'd rather hear a sharp argument than a fuzzy argument. There's a good reason why the company's named Fuzzysharp. Because it gives a fuzzy conclusion that's always safe. All right, please proceed. If it pleases the Court, I'd like to say why we're here for Claim 67 and not all the other claims, why we're here in general, and then finally, what the heck is Claim 67, and that's important. Okay, there are a number of claims that initially were asserted, but when we looked at the decision of the judge, the district judge, and also Intel had made an inter-party proceeding in the U.S. Patent and Trademark Office, and we looked at their arguments and their references, we thought it would be a good idea to acknowledge that the judge was right on some things, Intel was right on some things, and so we limited ourselves to Claim 67. Mayo requires, when the issue of eligibility is being... Does your decision not to address some of the other issues, does that affect your position on Claim 67? No, not at all, because they had the parts of the claim, it was this or that, and this was okay, but that was a problem, and there was no point of arguing those claims, because we don't want to waste your time. Now, Mayo requires, when you're looking at eligibility, to look at the claims, and to look at the claim, what's in the claim, and our problem is that the district judge took groups of claims and considered them as groups, except Claim 67 is so different from the other claims that were being considered by the judge, they were not considered separately. This case adds bounding volume to the previous claims, right? Yes, you're right. Bounding volumes, and isn't that just a concept, an idea, rather than something physical? It is theoretical, and so, if I may, Claim 67 is part of a stream of things to be done. If we can imagine, I'm a computer, and we're presently in digital space, and there's something here, and there's something here, and there's something here, and there's something there. Okay, as a computer, I know those things are there, but I don't know if I'm going to create an image for a monitor, what's in front, what's behind, what can be seen, what can't be seen, and so there has to be a decision. In 1991, the inventor, as a PhD student, realized that this is a problem because it took time for the computer to do it. Typically, at that time, the computer would say, from my point of view, would shoot out a ray, and if it hit a pixel, and then another pixel, the pixel after the first one would be deemed hidden. And that was very effective, but very, very slow. And his idea was, if you projected in digital space, these objects, the surfaces facing you, onto an imaginary screen, you could compare them. But because of different shapes of objects, this becomes complicated. So, his idea, he said, well, I'll put a rectangular box around the surface that I'm interested in looking at, and I'll project it on my screen, and I'll compare, if nothing else is being projected on it, then I know everything in that box is visible. And if there's an interference and the box is not visible, everything in the box is hidden. And this avoids weird renditions of, let's say, an arm sticking out of a wall, because if you make an error as to what is either visible or either hidden, it's always completely correct as far as what you're looking at. Now, the claim itself, I have pointed out, is part of the stream. The claim starts out, it says, a method of 3D computer graphics for processing the visibility of 3D surfaces before a subsequent step of visibility. And then goes on to say, the method comprises, and it refers back to the preamble, said subsequent step of visibility computations. So, either we look at it as a judgment claim, because it's an improvement of the system, it's not just some abstract manipulation of data, it's part of a whole stream of steps to ultimately render an image. Or, again, if we incorporate the preamble into it, we see again that it's part of a whole system. When I look at claim 67, I see what you're talking about. I see the manipulation. Yes. But that's all I see. It doesn't go beyond that. It doesn't go beyond, say, so now that I've manipulated this information, this is what I'm going to do, and this is how I'm going to do it. Well, Your Honor, the preamble says, these are steps to do before subsequent steps of visibility, which we know from the specification. And then, they use the bounding volume and looking, and it says, said subsequent steps of visibility computations are from the perspective of the same viewpoint, and it goes on additionally. So, this is an improvement in something large. You didn't need to see all those other steps, because they're known. It's a classic Jepson claim, in which the patent office encourages this kind of claim, because otherwise, the patent examiner is confronted with a 10-page claim. So, it does all this through some mathematical algorithms at the end. It takes the information, and then it does what? Oh, and then in other steps. What are those other steps, then, in this claim? I'm sorry? What are those other steps in this claim? Well, they're not reported here. But as is in a classic Jepson claim, you don't put in all the steps. You can focus on that portion where you're making your improvement, and that's what was done here. Are you saying Claim 7 is a Jepson claim? Yes, Your Honor. I haven't practiced patent law for quite a while, but it doesn't look like a Jepson claim to me. In any event, the point is whether the bounding volume makes a difference. Well, the patent itself shows that the tests were conducted, and it shows a significant improvement on how quickly things are rendered. We have, up until now, licensed many companies because, in fact, this is used throughout the industry. So, it has proved effective in the laboratory and in practice. Anything further? I think I said what I wanted to say.  Well, thank you, Your Honor. I'll take some rebuttal time for you, and we'll hear from Mr. Bagatelle. Thank you, Your Honor. Dan Bagatelle on behalf of the Apple Intel Corporation, with me is my partner, Jim Ballantyne. The ALICE test is designed to distinguish between claims that are really focused on an abstract idea and claims that do more than that. They claim a concrete technological application. So, ALICE tells it you can't simply gussy up the claim with conventional computer hardware. You can't simply add conventional pre- or post-solution steps. And in this case, we have a claim that is directed to an abstract concept and nothing more. If we start with step one of the ALICE test, what is the core idea? Well, Fuzzy Sharp is focused on the bounding volume concept. Essentially, this is an approximation method. Instead of analyzing depth point by point, you take a bounding volume, and you use that as a proxy for that portion of the service, and you evaluate that instead. That is an abstract concept. It is just an approach that you might see in a textbook. It's a fundamental building block for further calculations. And that's, in fact, as Judge Randall pointed out, that's all that's done in this claim. It's a pre-calculation. Nothing more is done in the tangible, physical realm of things and acts, as this court said in the BISAFE case. Even if you look at it as a series of ordered steps, it's just a geometrical manipulation of imaginary concepts. You've got the projection plane. You've got the grid cells. You've got the bounding volume. You've got the projection of the bounding volume onto this. It's all imaginary. And then ultimately, all you do is you calculate one distance versus another distance, and that's an input, perhaps, to other answers. The bounding volume is an imaginary boundary, right? I mean, there's no structure. There's no frame that actually is used to insert. It's just an approximation of a locale. It's a proxy. You build that prism around it. Instead of using my jacket or my button, you put something around it, and then you use that as a proxy to estimate. That's the abstract concept at a high level. And even at a detail level, every single step is done in the extract. So the question really is, is there anything in the claim that makes it more than that? You can't simply double down on the bounding volume. The bounding volume is an abstractor. What about the Z-buffer? The Z-buffer is just a memory. It is a standard computer hardware. There's nothing at all special about it. In fact, the basic algorithm could be done in your head or with pencil and paper. This claim does call for a Z-buffer, but that is about as conventional computer hardware as you can imagine. It's not a specialized piece of equipment. It's just any kind of memory, and that's in the court's claim construction. So what else have we talked about? Well, we've got the preamble, and it does suggest that there might be some further calculations. And even if we accept that as a premise, it's conceded that those calculations are simply further post-solution activity that are entirely conventional. There's nothing new there whatsoever. So the claim is really to the abstract idea. And ultimately, all you've got is one set of calculations at most before another set of calculations, neither of which produces anything in the real world. And as I think this court put it in Digitech, without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible. That's this case. It's abstract at every level, and there's nothing that converts it into more than that. So we submit that this report correctly invalidated the claim. Thank you, Mr. Bagatelle. Mr. Fink has some minutes if he wishes to use them. I say again, I'm sorry. You have some rebuttal time if you wish to use them. Yes, Your Honor, I do. Claim 67 is not a business claim, not a theoretical math manipulation, as suggested with respect to Digitech. It requires the use of a computer. It cannot be done mentally. It's an improvement in the process of using the computer for the calculation. And as I have said, if you don't want to accept that it's a Jefferson claim, please consider the fact that the claim steps incorporate the preamble, and the preamble says it's part of a whole. So it's, and it's not some law of nature that's being protected. People can, if they want to, if they want to brute force it and, and create images, they're free to do it. They don't have to use this. So we're not preempting anything. Thank you, Your Honor. Thank you. We'll take the case under advisement. That closes today's argument.